## CENTRE TURNPIKE COMPANY v. ALONZO SMITH.

Where, in an act of incorporation of a turnpike company, there is an exemption from toll of all persons travelling upon the " ordinary domestic business of family concerns," this does not extend to the case of physicians going to visit their patients.

The extent of that exemption defined.

When, by such act of incorporation, the company are required to keep their rates of toll "exposed to view," it is not sufficient that such rates be written and posted up in the toll house. They should be exposed to the view of travellers passing the gate.

But, travellers are not excused from paying toll, in consequence of such neglect of the company. The redress must be by public prosecution.

Where any one claims to pass such company's gate, toll free, by reason of any privilege or exemption, and is permitted to pass under such claim, he is not liable, in an action of assumpsit, for the toll, even when his claim of privilege is not well founded.

ASSUMPSIT, to recover toll of the defendant for passing the gate on the plaintiffs' turnpike, in Hancock. Plea, *non-assumpsit*, and trial by the court.

Upon the trial, in the county court, the plaintiffs introduced the keeper of said toll gate, as a witness, who testified that the defendant passed said gate seventy times, during the spring, summer and fall of 1838, by the permission of the witness, the defendant, at the time, claiming that he was exempt from paying toll and denying any liability, on his part, to pay toll. The witness further testified that the defendant

had never, since passing the gate, as aforesaid, promised to pay the amount claimed of him for passing the gate. It also appeared that no rates of toll were kept up, within sight of the gate, but they were posted up in the entry way of the toll house.

ADDISON,
January,
1840.

Centre Turn-
pike Co.
v.
Smith.

The act of incorporation was given in evidence, and the ninth section of the act provides, " that, at the several gates, " where toll shall be taken, there shall be erected and kept " exposed to view, a sign or board, with the rate of toll, with " all tollable articles fairly written thereon in large letters."

By the third section of the act, it is enacted, " that no per-" son shall be obliged to pay any toll at either of said " gates, who shall be going to or from public worship, or to " or from any grist-mill or saw mill, or on militia duty, or " on the ordinary domestic business of family concerns."

It further appeared, in evidence, that the defendant was a physician, residing in Hancock, and at the time of passing the plaintiffs' gate, as before stated, was visiting his patients in the town of Ripton.

Upon this evidence, the defendant contended that the plaintiffs could not recover on an implied assumpsit; that the plaintiffs, not having complied with the provisions of the ninth section of the act of incorporation, by keeping up the rates of toll within sight of the gate, were not entitled to receive and collect toll at said gate, and that, by the third section of the act, the defendant was exempt from paying toll. But the court rendered a judgment for the plaintiffs and the defendant excepted.

*Briggs & Barber*, for defendant, contended,

I. That the action of indebitatus assumpsit could not be maintained, in this case, as there was neither an express nor implied promise, on the part of the defendant, to pay the toll sought to be recovered by the plaintiffs, but, on the contrary, the declarations made by the defendant, when he passed the gate, rebutted every presumption of an implied promise, and cited, 2 Stark. Ev. 92. 1 Term. R. 20. *Whiting* v. *Sullivan*, 7 Mass. R. 107. *Centre Turnpike Co.* v. *Van-duser*, 10 Vt. R. 197.

II. That the plaintiffs were not entitled to collect toll at the gate in question, because they had not complied with the

'Addison,
January,
1840.

Centre Turn-
pike Co.
'a
Smith.

ninth section of the act of incorporation in keeping " exposed to view" the rate of toll, &c.

Where particular powers are conferred by the legislature upon a corporation and certain restrictions are imposed or certain things are required to be done by the corporation, and no penalty is annexed for not complying therewith, and no means are provided to enforce them, or protect the public from injury from the failure of the corporation to comply, it is a general rule that a compliance with such restrictions and requirements, by the corporation, is a condition precedent to their exercising and enjoying the privileges conferred upon them. Swift's Dig. 71. 1 Aik. R. 264.

III. That, from the facts stated in the exceptions, the defendant was exempt from paying toll at the gate in question. 2 Vt. R. 512.

*C. Linsley*, for plaintiff.

I. The defendant was not exempt from the payment of toll. The exemption of those travelling " on the ordinary domestic business of family concerns" can no more be extended to a physician going into an adjoining town to practice, than it could to a lawyer going to adjoining towns and counties on the business of his profession. The business of defendant was not domestic business within the meaning of the act. Nor was it business connected with his family, as it must be to entitle him to the exemption. The case of *G. M. T. Co.* v. *Hemmingway*, 2 Ver. R. 516, we regard as authority in point. 2 Pickering, 538. *Bates* v. *Sutherland*, 15 Johns. R. 510.

II. The ninth section of the act of incorporation does not require that the rates of toll should be in sight of the gate, but only to be put up at the gate, exposed to view, and doubtless, their being placed in the passage of the gate house, may be regarded as a compliance with the act.

But, however that may be, the plaintiffs' right to toll does not depend on that. If it did, then if one should maliciously destroy the board containing the rates of toll, all must go free until another could be procured. If defendant was injured or misled by the board not being in sight of the gate, he would probably have a remedy.

III. Nor are the plaintiffs divested of their right of toll because the gate keeper did not insist on its payment, at the

time defendant passed the gate. The right to obstruct the road by a gate and refuse a passage to all who will not pay toll, is a right granted the company for their benefit and to secure to them the *payment* of what they are entitled to receive. The toll surely is not payable for keeping up the gate, but for making the road and keeping it in repair. The road is the property of plaintiffs, made and kept up with their money and labor, and the public are required, by common principles of justice, as well as by force of the statute, to pay for the use of it.

The money is due to the company, presently, for passing the gate.

It appears, from the case, that defendant claimed that he was exempted from the payment of the toll, but in what way he claimed to be exempted, is not stated. If he claimed to be exempted when he was not, and thus deceived the servant of the corporation, it surely would furnish a very slender ground on which to claim a discharge of the debt. It is conceded that if defendant promised to pay toll, he might have been liable. But if he was really not liable an express contract to pay would have been unavailing, because there would have been no consideration to sustain the promise. If a special promise had been made, it would only be capable of enforcement on the ground that there existed a previous debt, or duty, which furnished the consideration for the special contract. If the debt or duty exists, the law will raise the necessary promise to pay. For it is a settled rule that whenever, in law, a sum of money is due from defendant to plaintiff, the law implies a promise to pay it. 2 Stark. Ev 94. 2 Chitty's Pl. 13, 15. 1 Term. R. 616

The opinion of the court was delivered by,

REDFIELD, J.—In this action the plaintiff seeks to recover, in assumpsit, for tolls due the company, from the defendant, for passing their gate. It is admitted the defendant was allowed to pass the gate by the toll-gatherer, under a claim of exemption from liability to pay toll, by reason of his being a physician and being, at the several times of passing the gate, on the business of visiting his patients in his ordinary ride. This exemption is claimed under that provision, in the charter of the company, which exonerates those persons from paying toll, who have occasion to pass the gate on the "ordinary domestic business of family concerns."

ADDISON,
January,
1840.

Centre Turn-
pike Co.
*v*
Smith.

Centre Turn-
pike Co.
v.
Smith.

Now it is obvious that this exemption must have such a construction as neither to defeat its own object, nor yet to defeat the object of the incorporation, by depriving the company of all benefit arising from tolls. No one can doubt such was the intention of the legislature. To say, then, that a physician is to pass the company's gate, toll free, while visiting the sick, because, forsooth, that is his " ordinary business," would be to establish a principle which would at once deprive the company of all tolls. For very few men travel, except, in some sense, upon their ordinary business. The proprietors of a stage coach might, with the same propriety, claim to pass the gate toll free, because it is their ordinary business to drive a stage coach, and, with very little extension, the rule might be made to include all travellers, except those who had suddenly abandoned their ordinary business, and, in the spirit of knight-errantry, had taken in hand some new and extraordinary matter.

The reasoning of the learned judge, who delivered the opinion of the court in the case of the *Green Mountain Turnpike Company* v. *Hemmingway*, 2 Vt. R. 512, is very full and very satisfactory upon this point. It is there laid down, that a person, in order to claim the benefit of this exemption, must, at the time of passing the gate, not only be upon his " ordinary business, " but it must be " domestic business," and " must relate to family concerns." In other words, it must be the common and ordinary business pertaining, primarily and directly, to the maintenance and support of the family of the person claiming the exemption. From this view, it is very apparent that the defendant was not exempt from paying toll on this ground. But the defendant claims to have been exempt from liability to pay toll, by reason of the neglect of the company to post up, in a proper manner, their rates of toll. They were required to keep them written or posted upon a board and " exposed to view." This, doubtless, means to the view of the traveller, without the house. For if they may be put up within the toll house, it is difficult to perceive why they might not be kept in a still more obscure place. It could hardly be of any importance upon what material they were written, or whether they were written, printed, or painted. It would be absurd

Addison,
January,
1840.

Centre Turn-
pike Co.
v.
Smith.

to suppose the legislature could have intended any such distinction. And although, in the present case, they have not fully complied with the requisitions of the statute, yet it by no means follows, that, on that account, they are precluded from taking tolls. No such inference is fairly deducible from the act of incorporation. And surely we ought not to ingraft limitations and provisos, or conditions, involving consequences so highly penal, unless such is the expressed, or obviously implied purpose of the legislature. In the present case, a compliance with this requirement is no where expressly, or by any fair implication, made a concurrent condition to the company's right to take toll. The object to be answered by this provison is to secure the public against imposition, and to assure the traveller, that no more than the legal rate of toll is required of him. The remedy for the company's neglect, if any, must be sought in a public prosecution, operating upon the neglect and tending to correct it. The conclusion to which we come, then, is, that the defendant was, at the several times of passing the plaintiffs' gate, liable to pay toll, and had they resisted his claim of exemption, they might, in any of the modes pointed out in their charter, have compelled such payment.

But, in the present case, the defendant claimed the right to pass the gate without paying toll, on the ground of exemption or privilege, and on that claim he was permitted to pass. There was no express promise to pay, in any event, and will the law, under the state of facts here presented, imply a promise ? If not, the plaintiff must fail in the present action. We know there are many cases in which a person is virtually made liable in assumpsit for a tort. But those cases may he resolved into classes, none of which include the present.

1. Where the defendant has taken personal property and converted it into money. *Gilmore* v. *Wilbur*, 12 Pick. 120. By Jackson, Judge, in *Cummings* v. *Noyes*, 10 Mass. 433. By Lord Mansfield, in *Hambly* v. *Trott*, Cowper, 373. But in these cases the chattels must have been actually converted into money. Such is the language of the books. I find but one case where chattels have been taken by force, and not converted into money, that assumpsit has been sustained, and that case rests upon no very satisfactory basis. *Hill* v. *Davis*, 3 N. H. R. 386.

ADDISON,
January,
840.

Centre Turn-
pike Co.
v.
Smith.

2. When the defendant obtains the goods surreptitiously, under color of sale. Chitty on Contracts, 19. *Hill* v. *Prescott*, 3 Taunton, 274. *Edmeads* v. *Newman*, 8 E. C. L., 116. In the latter case, the defendant came fairly by the bills, but fraudulently obtained the money upon them. The case of *Clarke* v. *Shee*, Cowper 197, is of the same character.

3. Where one employs the apprentice of another, even when he did not know of the apprenticeship, he is liable in assumpsit for work and labor. *Lightly* v. *Clouston*, 1 Taunton, 112. *Bowes* v. *Tibbets*, 7 Greenleaf's R. 457. See, also, *Eades* v. *Vandeput*, 5. East. 39, which involves the same principle.

4. Where the defendant, under false color, has recovered the rent of plaintiff's estate. 2 Starkie's Ev. (6th Ed.) 64 and cases cited. So, also, when the defendant has intruded into plaintiff's office and, under color of right, has received the fees. Ib.

But I find no case where, as in the present, the defendant is guilty of no tort, and of no fraud, and claims to act by virtue of a legal right, and that claim is recognized, at least *pro hac vice*, that the party has subsequently been made liable, in assumpsit, as on an implied contract. Hence, when the defendant has received rent, under a claim of title to the premises, he is not liable to be sued therefor in assumpsit. 2 Starkie's Ev. 65. *Cunningham* v. *Lawrents*, Bacon's Ab. 5th Ed., 260. And in an action for use and occupation, the title cannot, ordinarily, be tried. Peake's Ev. 258. B. N. P. 133. It is no doubt true, in the present case, that if the plaintiffs had closed their gate upon the defendant, and thus compelled him to pay toll unjustly, he might have maintained assumpsit for the money paid, and thus have tried the question of right. *Fearnley* v. *Morley*, 5 B. & C. 25. S. C. 11 E. C. L. 137. But this is upon the ground that the parties are not upon equal footing, and that there is a virtual duress. In every view of this case, then, although in some sense reluctantly, we feel compelled to the conclusion that the action will not lie. Perhaps there is no injustice in this result, as the plaintiffs did not see fit to insist upon their tolls, at the time, and in the manner pointed out by their act of incorporation. The most that can be pretended in favor of

the plaintiffs, in the present case, is, that, understanding all
the facts and circumstances of the case, they have foregone
a legal right, under a misapprehension of the law.  In such
case, it has always been considered, that the party was reme-
diless. *Bilbie* v. *Lumley*, 2 East, 469. *Lowry* v. *Bordieu*,
Doug. 467.   *East India Company* v. *Tritton*, 3 B. & C.
280.   10 E. C. L. 79.

Addison,<br>January,<br>1840.<br><hr>Centre Turn-<br>pike Co.<br>v.<br>Smith.

Judgment reversed and new trial granted.