## STATE OF VERMONT *v.* VILLAGE OF ST. JOHNSBURY.

*Liquor Law. Fines, to whom Payable. Assumpsit. Pleading. Voluntary Payment. Estoppel. Voluntary or Gratuitous Services. Liquor Law of 1852.*
*Gen. St. c. 94, ss. 9, 10.*
*R. L. s. 1744.*

1.  All fines imposed under the liquor law for its violation are payable to the State; and when such fines are paid by a justice of the peace to the treasurer of a village, they are recoverable in an action of general assumpsit in the name of the State against the village, although the prosecutions resulting in the payment of the fines were wholly conducted by the village authorities and at its expense.

2.  The State is not estopped by the conduct of its officers in not objecting to such payments, although the state's attorney and state auditor knew of them,—as it did not appear that the village had been in any way influenced by what the State through its officers did or omitted to do.

3.  The village cannot be allowed anything for disbursements in respect to legal services and expenses, or for taxable costs; for it was the duty of the state's attorney to attend to the prosecutions; and one cannot be made a debtor whether he will or not for gratuitous services.

4.  The State is also entitled to recover $100, less $13.22 paid out of it for court and clerk fees, which sum was paid by a respondent, who appealed to the County Court, and his recognizance was taken to the village when it ought to have been to the State, and his bonds forfeited.

GENERAL ASSUMPSIT. Heard upon an agreed case, June Term, 1886, Ross, J., presiding. Judgment *pro forma* for the defendant.

It was conceded that the State was entitled to exceptions.

Agreed statement: The action is general assumpsit. The State claims to recover the amount of certain fines and costs which were paid to the village treasurer at various times between the first day of August, 1881, and March, 1885. All these fines and costs accrued in prosecutions for the illegal sale

State *v.* St. Johnsbury.

of intoxicating liquor and for being found intoxicated. All these prosecutions were instituted upon complaint of the police of the defendant village as complaining officers, and were wholly conducted by the village authorities and at the village's expense. Neither the state's attorney nor any other state, county or town officer ever had any connection with or control over any of the prosecutions. The fines and costs were paid by the respective convicted respondents to the justices of the peace before whom such prosecutions had been had, and were by such justices paid into the village treasury. The village treasurer in good faith claimed that the fines and costs belonged to the village treasury, and said justice acquiesced in the claim and paid the money over, from time to time, as it was received by them. The state's attorney for Caledonia County and state auditor knew of the payments as they were made ; and neither they nor any other state officer ever objected to said justices to the payments until the time of the demand. Neither the village treasurer nor any other village officer ever promised to pay the money or any part thereof to the State or any officer thereof. The village has never in any way recognized the right of the State to any of said money, nor in any way agreed to hold it for the State or to pay it or any part thereof to the State. The claim of the village has all the time been, and now is, in good faith that the money belonged to it. The payments were made to the village treasurer voluntarily by said justices, with the knowledge of the state authorities aforesaid and without objection, on their part. The fines so paid amount to $397.35, and said costs to $12.09. All the costs were paid out before the demand by the village treasurer to the various justices, witnesses and prosecuting officers, who would have received them from the State had the funds been paid into the state treasury. Before the demand one-fourth of one of said fines, to wit, $12.50, had been paid by the village treasurer to the complainant in that prosecution, as is provided by law.

In a prosecution, begun and prosecuted as aforesaid, against one Monty, the respondent appealed to the County Court and

gave bonds to the said village as required by law, which were forfeited in the County Court and chancered to $104. This $100 the village received and held as it did said fines. Out of it the village, before demand, paid for costs and court and clerk fees and attorney fees in said prosecution the sum of ·$26.85. The court and clerk fees alone amounted to $13.22 in said case. Before the making of said demand the village had paid out of said funds the sum of $98, aside from said $26.75, for legal services and expenses necessarily incurred in conducting said prosecutions and securing said convictions, and the further sum of $21.63 for taxable costs in other liquor cases of the same character, begun and prosecuted in the same way, during the same period in which cases convictions had not been secured. And of this last-named sum $13.32 accrued in cases where the bonds of the respondents were forfeited and paid, and the State received the money collected on the bonds to amount exceeding said $13.32:

Before the demand, all the balance of said money had been paid out and expended by the village treasurer upon the orders of the trustees of the village for general purposes of the village.

On the 7th day of March, 1885, the state's attorney for Caledonia County demanded payment of the fines and costs to the state treasurer. No other demand was ever made therefor by any person or authority.

*Alex. Dunnett, State's Attorney*, for the State.

*Ide & Stafford*, for the defendant.

The fines in question belonged to the defendant. R. L. ss. 1744, 1746. The penalty for " selling," etc., is " he shall forfeit to the State," etc. This is not a specific disposition of the fines, such as is found in other places, where it is declared that certain fines shall be paid " into the state treasury." Assumpsit for money had and received cannot be maintained. There is no privity between the parties. The defendant does

not hold this money "to the use of the plaintiff." It never has so held it. On the contrary, it received and has always retained it under a distinct adverse claim of a right to take and appropriate it. No case can be found in the books where the action has been maintained by A against B for money of A's, received by B from C under a claim of right made in good faith by B and acqaiesced in by C. Thus, A pays a sum of money into a banker's for a specific purpose; the banker's clerk, by mistake, pays the money to B, who has no right to it. Held that A cannot maintain an action against B to recover it back. *Rogers* v. *Kelley*, 2 Camp. 123; *Center Turnpike Co.* v. *Smith*, 12 Vt. 212; *Williams* v. *Everett*, 3 Price, 58; *Stephens* v. *Badcock*, 3 B. & A. 354; *Coles* v. *Wright*, 4 Taunt. 197; *Stewart* v. *Fry*, 7 Taunt. 339; *Howell* v. *Batt*, 5 B. & A. 504; *Gates* v. *Bell*, 3 B. & A. 643; *Adams* v. *Nickerson*, 1 Allen, 427. The plaintiff is estopped. The state's attorney and state auditor knew what was being done,— that the defendant was maintaining a police force, employed counsel, summoned witnesses, etc., in prosecuting these cases. Bigelow Est. 246; *People* v. *Jansen*, 7 Johns. 332; *U. S.* v. *Behan*, 110 U. S. 338; 10 Mass. 155; *Commonwealth* v. *Andra*, 3 Pick. 224; 5 Wall. 772; *Rogers* v. *Burlington*, 3 Wall. 654; 13 Wall. 297. The case cannot be distinguished in principle from that of a voluntary payment. Brayt. 222; 1 Chit. Pl. 355; Dicey Parties, 14; Rob. Dig. 526; 2 Smith Lead. Cas. (star page) 402; *Sowles* v. *Soule*, 3 New Eng. Rep. 591, and *post*. Interest is recoverable only since the demand. Rob. Dig. 399; Mass. Dig. 3091; 3 Pick. 261.

The opinion of the court was delivered by

ROWELL, J. This case is defended on several grounds. The first is that the fines and costs in question belong to the village and not to the State.

By the liquor law, as first passed in 1852, fines for illegal sales were to be paid to the treasury of the town where the

offense was committed—St. of 1852, No. 24, s. 5—but if the grand jury prosecuted, the fine and costs went to the treasury of the State—sec. 24. In like manner the penalty for being drunk was first made payable to the treasury of the town where the offense was committed. St. of 1855, No. 2, s. 2.

But in the General Statutes the law was changed, and in both those cases the fines and costs were made payable to the treasury of the State—chap. 94, ss. 9, 10. And the law has been so ever since. In the Revised Laws, it is true, the phraseology is a little changed—" shall forfeit to the State," instead of " to the treasurer of the State," or " to the treasury of the State," as in the General Statutes. But this makes no difference, for the present phraseology constitutes just as effective a disposition of these fines and costs to the treasury of the State as the old praseology did. And the last Legislature must have thought so, for in an act amendatory of section 1744 of the Revised Laws, whereby it is provided to what treasury fines and costs shall go that are not otherwise disposed of by law, it took pains to declare that the act shall not to be construed to divert from the State treasury any fines or costs arising from prosecutions under the liquor law.

It is clear, therefore, that the fines and costs in question belong to the State and not to the village.

It is also said that these were voluntary payments, and therefore not recoverable. But the very idea of a voluntary payment implies a right on the part of the person paying to exercise volition in respect of paying or not paying. But here the justices had no such right. It was their duty, under the law, to pay to the county clerk what was due to the State, and they had no right to choose to pay to the village.

As to the claim that the State is estopped from recovering the money, it is sufficient to say that it does not appear that the conduct of the village has been in any way influenced by what the State, through its officers, did or omitted to do. It might also be said that the State has neither concealed nor

misrepresented any material fact, and that the village was ignorant of no such fact.

But it is said that *assumpsit* for money had and received will not lie, for that there is no privity between the State and the village, as the latter received from third persons and has retained the money in good faith under an adverse claim of right and ownership.

But in order to maintain this action there need be no privity between the parties, nor any promise to pay, other than what arises and is implied from the fact that the defendant has money in his hands belonging to the plaintiff that he has no right conscientiously to retain. In such case the equitable principle on which the action is founded implies the promise. When the fact is found that the defendant has the plaintiff's money, if he can show neither legal nor equitable ground for keeping it, the law creates the privity and the promise. *Brand* v. *Williams*, 29 Minn. 238 ; *Knapp* v. *Hobbs*, 50 N. H. 476 ; *Eagle Bank* v. *Smith*, 5 Conn. 75 ; *Mason* v. *Waite*, 17 Mass. 560 ;. *Hall* v. *Marston*, Ib. 574; *Vaughn* v. *Matthews*, 13 Q. B. 190, note ; *Walker* v. *Conant* (Sup. Ct. of Mich.), 8 West. Rep. 181. Lord MANSFIELD says in *Moses* v. *Macfarlan*, 2 Burr. 1005, that " if the defendant be under an obligation from the ties of natural justice to refund, the law implies the debt and gives this action, founded in the equity of the plaintiff's care, *as if it were upon a contract*," or, as the Roman law puts it, " *quasi ex contractu.*" Though as to its merits this case has always been doubted and rarely followed—13 Vt. 644, 2 H. Bl. 414—it does not seem to have been criticised on this point; and in *Cary* v. *Curtis*, 3 How. 236, the Supreme Court of the United States adopts its language as one of the principles on which the action for money had and received is maintainable.

*Howard* v. *Wood*, 2 Show. 23 and 1 Freem. 473, 478, was *indebitatus assumpsit* for the fees and profits of the office of stewardship of a court-leet and court-baron, brought by a grantee of the reversion of the office for ninety-nine years,

State *v.* St. Johnsbury.

against a stranger who took the fees and profits thereof to him-self. It was objected that the action would lie only when there is *quasi* a contract or an agreement between the parties; as, when another pays money to J. S. to my use, there J. S. agrees by construction of law when he receives the money to pay it to me; but when a man receives money as due to him-self, it will be hard to make this an agreement by construction whether he will or not; that the declaration ought to be according to the fact; that it was laid that the defendant re-ceived the fees *ad usum et commodum querentis*, whereas in truth he received them to his own use. But the court ad-judged that the action would lie, but said had it been an original case it should have adjudged otherwise, but that there were many such judgments, some passing *sub silentio* and others on debate, especially in the Exchequer.

The same objection was made in *Arris* v. *Stukely*, 2 Mod. 260, which was *indebitatus assumpsit* for the fees of the office of comptroller of the customs at the port of Exeter, which the defendant had received to his own use, against the will of the plaintiff, on pretense of title to the office; but the court gave judgment for the plaintiff.

Indeed, assumpsist for money had and received is now the usual mode for trying the title to an office to which fees are annexed. *Mayor of London* v. *Gorey*, 1 Freem. 433; *Powell* v. *Milburne*, 3 Wils. 355; *Coyter* v. *Dodsworth*, 6 Term. 681; *Green* v. *Hewett*, Peake, 182; *Hall* v. *Mayor, etc., of Swan-sea*, 5 Q. B. 526.

In *Hitchin* v. *Campbell*, 2 W. Bl. 830, the court said that this action had been much extended as a very useful and gene-ral remedy; that while the action was in its infancy the courts endeavored to find technical arguments to support it; as, by a notion of *privity*, etc., but that that was too narrow ground to support the action to the extent to which it had been ad-mitted.

In *O'Conley* v. *City of Natchez*, 1 Smedes & Marshall, 31 (s. c. 40 Am. Dec. 87), it is held that assumpsist for money

had and received lies when intruders or trespassers collect under an adverse claim that which belongs to the plaintiff.

It is said by HEATH, J., in *Lightly* v. *Clouston*, 1 Taunt. 112, that HOLT, C. J., held it clear law that if one goes and receives my rents from my tenants under pretense of title, I may bring my action against him for money had and received. The same notion is favored by many authorities. Bac. Ab. Assumpsit (A) ; *Arris* v. *Stukely*, 2 Mod. 260 ; *Mayor of London* v. *Gorey*, 1 Freem. 433 ; *Hasser* v. *Wallis*, 1 Salk. 18. But some of the authorities are the other way. *Cunningham* v. *Laurents*, reported in Gwillim's Notes to Bac. Ab. Assumpsit (A) ; *Marshall* v. *Hopkins*, 15 East, 313 ; *Codman* v. *Jenkins*, 14 Mass. 96 ; REDFIELD, J., in *Turnpike Co.* v. *Smith*, 12 Vt. 212.

In *Bank of Metropolis* v. *Nat. Bank*, 19 Fed. Rep. 301, assumpsit for money had and received was maintained upon the ground that the law implies a promise whenever the defendant has in his hands money of the plaintiff's that he is not entitled to retain as against the plaintiff ; and Judge WALLACE says that it has long been well settled that want of privity is no objection to maintaining the action.

In *Pierce* v. *Crafts*, 12 Johns. 90, it is said not to be true that the action for money had and received can be grounded only on privity of contract, but that if a man receives my money without authority, I may recover it of him in this form of action, although there is no privity of contract between us. *See* 1 Cranch, Appendix [*440], where the cases are collated.

In the case before us, the justices could impart to the village no right to retain this money, and the village took it, knowing all the facts, and chargeable with knowledge of the law that it belonged to the State, and its payment to the village in the circumstances constituted no recognition by the State of the claim of the village, not even *pro hac vice*. These and other features distinguish this case from many of those relied upon by the defendant. Thus, in *Rogers* v. *Kelley*, 2 Camp. 123,

the banker's clerk, by mistake, paid plaintiff's money to the defendant for a valuable consideration, the defendant not knowing that it was plaintiff's money; and although in giving judgment for the defendant the case is put on the ground of want of privity, yet it comes better within the principle laid down in *Mason* v. *Waite*, 17 Mass. 560, and adopted in *Lime Rock Bank* v. *Plimpton*, 17 Pick. 159, and *Thacher* v. *Pray*, 113 Mass. 291, that it would be mischievous to require those who receive money in the way of business or the payment of debts to look into the authority of those from whom they receive it.

In *Turnpike Co.* v. *Smith*, 12 Vt. 212, defendant had never promised and had no money in his hands belonging to the plaintiff, and the plaintiff was regarded as having foregone a legal right under a misapprehension of the law. So in *Williams* v. *Everett*, 3 Price, 58, defendant had neither promised plaintiff nor had any money in his hands belonging to him. In *Coles* v. *Wright*, 4 Taunt. 198, the defendant was a mere bearer of the money, and had paid it over to the trader lying in prison before he became a bankrupt, and it was sought to charge him by relation; but he had judgment. In *Stewart* v. *Fry*, 7 Taunt. 339, there was nothing to restrain the right of the acceptors who made the remittance to recall the money as they did, nor of the defendants to make any new appropriation of it that they thought fit, nor any promise to hold it for plaintiff's use.

In *Howell* v. *Batt*, 5 B. & Ad. 504, the defendant was servant to another, and no sum of money had been expressly given to him by his master for the plaintiff, nor did it appear but that his master might have countermanded payment to the plaintiff, and the defendant had agreed to hold no money to the use of the plaintiff, but held it to the use of his master. *Yates* v. *Bell*, 3 B. & Ald. 643, is simply to the effect that when a party to whom a bill is remitted repudiates the trust with which it is clothed, it gives no right of action to the party to whose account the bill is directed to be applied.

In *Adams* v. *Nickerson*, 1 Allen, 427, the defendant did not know that the debtor abroad had instructed his agent here to have him pay plaintiff's claim out of money in his hands, and he had repaid the balance of it to the agent, as he agreed to do when he received it.

As to the amount the State is entitled to recover.

The village received $397.35 in fines and $12.09 costs, and paid out the costs to those entitled, and $12.50—one-fourth of one of the fines—to the complainant in that case, and the State does not seek to recover those costs, and only $384.85 of the fines, it being the amount thereof less the $12.50, with interest thereon from March 7, 1885, the time of demand.

Although Monty's recognizance was taken to the village when it ought to have been taken to the State, and might for that reason have been unenforceable ; yet, being taken in the business of the State, the money paid upon it belonged to the State and not to the village, which was unauthoritatively assuming to control the business and make it its own. The State seeks to recover this $100 also, less the $13.22 paid out of it for court and clerk fees in that suit, with interest thereon from the time of demand.

The village can be allowed nothing for disbursements in respect of legal services and expenses, as in no view can it charge the State with expenses that no one in the circumstances was then authorized by law to impose upon the State in such cases, it being the official duty of the state's attorney to attend to them.

Nor can the village be allowed anything for disbursements in respect of the taxable costs in the cases in which no convictions were had, notwithstanding the State realized something from them by way of forfeited recognizances ; for if one undertakes my business claiming it to be his own, and therein makes expenditures, I am not liable to him therefor although he has vantaged me thereby. This is so even when one undertakes my business for me and on my behalf without my request, expressed or implied, and benefits me, for his services are gratu-

itous. One cannot thrust himself upon me and make me his debtor whether I will or not.

Hence, the State is entitled to recover the said sums of $384.85 and $86.78, making in all the sum of $471.63, with interest thereon from March 7, 1885 ; and the judgment is reversed, and

Judgment for plaintiff accordingly.