RHODE ISLAND HOSPITAL TRUST COMPANY, Executor, *vs.* J. HOWARD MANCHESTER.

In Rhode Island it is not enough for a plaintiff in the so-called equitable *assumpsit* for money had and received to show that the defendant has received from a third party money which should have been paid to the plaintiff.   To maintain the action the plaintiff must show some relation or duty in the nature of a trust in his favor arising from the receipt of the money by the defendant.
Where no privity of contract is shown *assumpsit* does not lie.

PLAINTIFF'S petition for a new trial.

This action was *assumpsit* brought by the plaintiff as executor of the will of Mary E. Burnside against the defendant individually.

*July* 14, 1888.   STINESS, J.   Mary R. Burnside, by her will, proved April 4, 1876, gave to her husband, Ambrose E. Burnside, all her property, which included certain Buckner bonds, for life, with power and authority, at pleasure, to sell and transfer any part of the personal property and to appropriate the proceeds to his own use.   January 7, 1879, Burnside procured a loan from the Farmers Loan and Trust Co. of New York, of the sum of fifteen thousand dollars, depositing fifteen of said Buckner bonds, of the

par value of one thousand dollars each, as collateral security.. Burnside died September 13, 1881, at which time the Farmers Trust Co. still had the bonds, claiming that some time prior to his death he applied to the company to release him from his indebtedness by taking the bonds, which were made payable to bearer, as their own property, in payment of his debt; and that the company agreed to this arrangement, afterwards treating the bonds as their own.   Upon payment of the bonds, with their accrued interest, in January, 1883, there was a surplus or profit over and above the amount of the loan and interest up to that time, amounting to $5,641.84, which was remitted to the defendant as administrator on the estate of General Burnside.   A substantially similar transaction took place between General Burnside and William H. Osborn, of New York, the loan being ten thousand dollars upon ten bonds, and the sum remitted by him to the defendant being $3,844.75.   Upon this state of facts the plaintiff sues the defendant for the surplus remitted to him, as money had and received by him to the plaintiff's use, claiming under the decision in *R. I. Hospital Trust Co.* v. *Commercial National Bank*, 14 R. I. 625, that the power of sale given to General Burnside did not authorize him to mortgage or pledge the property left to him by his wife; that the transaction was a pledge; and that, consequently, the surplus arising from the pledge belongs to the estate of Mrs. Burnside and not to the defendant, because the bonds belonged to her estate.

The plaintiff has suits now pending against the Farmers Loan and Trust Co. and Osborn, in New York, for the entire proceeds of the bonds.

It appeared from the plaintiff's witnesses that the Farmers Loan and Trust Co. and Osborn claimed to have bought the bonds in the manner stated, and that they remitted the surplus to his estate, not because of any obligation to do so, but voluntarily, because, having made the loans from friendship to General Burnside, they did not wish to retain a profit from the transaction.   Evidence of these facts was offered to the jury, whereupon the defendant's motion for a nonsuit was granted, and the plaintiff now prays for a new trial.   The question is, assuming that the plaintiff can show that the bonds belonged to the estate of Mrs. Burnside, can

.it maintain an action of *assumpsit* against the defendant for the money which he has thus received, not on account of her estate, either intentionally or by mistake, but under a claim of right.

The plaintiff makes the broad claim that, when one can show an equitable claim for money, he can maintain an action for it in *assumpsit*. Expressions to this effect are to be found in many of the opinions cited by the plaintiff, and yet it will be found upon examination that the cases themselves do not establish such a proposition. It is true that the action of *assumpsit* is not confined within the lines of actual promise and contract, but extends to many cases where a plaintiff can recover only upon equitable grounds, from which a promise and contract are implied. But it does not follow that an action of *assumpsit* will lie upon a merely equitable claim. It does not depend simply upon what a court or jury may think is fair and right. There must be some discernible limit to the action in its equitable form, and this limit appears, in general terms, to be in the nature of a trust. That is to say, when a defendant has received money or its equivalent, under circumstances amounting to a trust to pay it over to the plaintiff, privity of contract arises from the relation of the parties, and a promise is implied. This distinction is very clearly brought out in *Nolan* v. *Manton*, 46 N. J. Law, 231. Upon the plaintiff's showing that the defendant had received money from a bank, where it had been deposited in the name of her deceased husband, upon a promise to pay it over to an administrator, when one should be appointed, it was held that this was a trust in favor of the plaintiff administrator, and a nonsuit was properly refused. But the defendant, as her part of the case, denied that she received the money upon any such trust, and contended that it was her own, and that the officers of the bank, being satisfied that she was the owner, paid it over to her as such. Her counsel then asked the court to instruct the jury that the receipt of money under such a claim would not raise an implied promise in law to pay the money to the plaintiff, and, if this were the fact, the action could not be maintained. This request was refused, but the refusal was held to be error, and the judgment for the plaintiff reversed. This case follows the earlier case of *Sergeant* v. *Stryker*, 16 N. J. Law, 464, which is a very thorough and instructive examination of this subject on prin-

ciple and authority.    An analysis of the cases cited by the plaintiff, which are representative cases out of many, discloses a trust relation, quite sufficient to sustain the action in the particular instances, without adopting the broad expressions that have been used in many of the opinions as the rule of law.

*Gaines* v. *Miller*, 111 U. S. 395, was a case of ratification of a sale of plaintiff's property and suit for the proceeds.    If the defendants sold the plaintiff's property, clearly they would hold the proceeds to her use, and the court so held.    *Bank of Metropolis* v. *First National Bank of Jersey City*, 22 Blatchf. 58, was a case of collection of negotiable paper with a qualified indorsement. Under the notice given by the indorsement it was held that the money was received to the plaintiff's use.    *White* v. *Continental National Bank*, 64 N. Y. 316, was to recover back money paid on an altered draft, in ignorance of the forgery.    The defendant had received the plaintiff's money without right, and could only hold it for the plaintiff.    *Risdon* v. *De La Rua*, 57 N. Y. Superior Ct. Rep. 63, was to recover money which the defendant's testator had agreed to pay to the plaintiff when collected.    *Harper* v. *Claxton*, 62 Ala. 46, was to recover back money paid on a rescinded contract.    When the money which the defendant received from the plaintiff was no longer the consideration for a contract, it belonged to the plaintiff and was held to her use.    *Lawson's Executor* v. *Lawson*, 16 Gratt. 230; 80 Amer. Decis. 702, was for specific money delivered to the defendant by plaintiff's testator, for safe keeping. ·A trust results to the owner from the custody or disposition of his property.    *Central Railroad* v. *First National Bank of Lynchburg*, 73 Ga. 383, was a case of special indorsement of a draft.    *Held*, that the plaintiff in error had notice it was to be paid to the defendant in error, and hence it was paid to its use, and there was privity.    In *Knapp* v. *Hobbs*, 50 N. H. 476, the defendant took property from a mortgagor at his request, sold it, and paid him the proceeds.    As the recorded mortgage was constructive notice of plaintiff's title, it was held that the defendant received the proceeds to the plaintiff's use, and should have paid the money to him.    *State* v. *St. Johnsbury*, 59 Vt. 332.    The town collected fines and costs which enured to the State by statute.    It was the ordinary case of money received to the use of another.    *Pugh* v.

*Powell*, 11 Atlantic Reporter, 570, was for money paid to the defendants for plaintiff's use.   *O' Conley* v. *Natchez*, 9 Miss. 31, was for wharfage collected for use of plaintiff's wharf by trespassers in possession.   The tort being waived, the defendant stood as the agent or trustee of the plaintiff for the profits.   *Peterson* v. *Foss*, 12 Oregon, 81.   Defendant surreptitiously took a note belonging to the plaintiff and collected it.   Held, that he received the money for the plaintiff.

In some of these cases the money passed directly from the plaintiff to the defendant, and, when it appeared that the defendant had no right to hold it, the duty to return it to the plaintiff arose, and thus he became the plaintiff's trustee.   Privity and implied promise follow from this relation of the parties.   In other cases money was paid to a defendant expressly for the plaintiff's use, or under such circumstances as to warrant his holding it only for the plaintiff's use.   These cases, therefore, disclose an important qualification to the general statement that an action will lie upon an equitable claim, namely, that the claim must be coupled with a duty to pay the money to the plaintiff arising from the relation of the parties or the character of the defendant's receipt or holding of the money.   The case of *Brand* v. *Williams*, 29 Minn. 238, is not within this qualification, but goes to the full extent of the plaintiff's claim.   *Hall* v. *Marston*, 17 Mass. 575, is often quoted in support of the rule as claimed by the plaintiff.   But in that case money had been sent to the defendant to be paid to the plaintiff, and the court found that he acquiesced in the direction.   In this respect the court distinguished the case from *Williams* v. *Everett*, 14 East, 582, saying: " In that case there was a positive refusal of the agent to act according to the orders of the person who remitted the money, except so far as to receive the contents of the bill.   The difficulty was to establish an implied promise against an express denial."   The point upon which these two typical cases turned was not whether the money equitably belonged to the plaintiff, but whether the defendant stood in such a relation to the plaintiff as to raise the duty of payment to him and to imply a promise to do so.   In support of the rule that there must be privity of contract between plaintiff and defendant, see *Clarke* v. *Shee and Johnson*, 1 Cowp. 197, 200 ; *Grant* v. *Austen*, 3 Price,

58; *Douglass* v. *Skinner*, 44 Conn. 338; *Allen* v. *McKeen*, 1 Sumner, 276; *Cobb* v. *Becke*, 6 Q. B. 930; *Jones* v. *Carter*, 8 Q. B. 134; *Watson* v. *Russell*, 5 B. & S. 968; *Libby* v. *Robinson*, 9 Atlantic Reporter, 24. The following cases are exactly in point: *Hall* v. *Carpen*, 27 Ill. 386. These parties sent cattle to market, which were sold by the same broker. In accounting, he paid the defendant too much, and the plaintiff, in precisely the same proportion, too little. The plaintiff sought to recover his deficit of the defendant, but the court held that there was no privity of contract. *Moore* v. *Moore*, 127 Mass. 22. One received money as his own from an executor, under a mistaken interpretation of the will; but it was the person who should have received the money. *Rand* v. *Smallidge*, 130 Mass. 337, was a similar case.

It is clear from this examination of cases that it is not enough for a plaintiff in *assumpsit* to show that a third party should have paid money to him instead of paying it to the defendant. To hold the defendant, he must go further and show some relation or duty, in the nature of a trust, arising from the receipt of the money. In the case before us we find nothing which tends to show this. The defendant received the money from the Farmers Loan and Trust Co. and from Osborn, as a gift, prompted by a sentiment or obligation of friendship, or else it was intended as payment of a debt understood to be due to the estate in his hands. In either case he holds it under a claim of right, not only independently of the plaintiff, but without any recognition whatever of the plaintiff's claim. Under advice of counsel and pending litigation, he has refrained from entering the amount received in his account, but in no way has he admitted the plaintiff's right to the money. How can we imply a trust relation or a receipt of money to the plaintiff's use in the face of a denial of the plaintiff's right? Circumstances may show such a relation, although the defendant deny it; but here the plaintiff, at most, shows nothing more than that the money ought to have been paid into Mrs. Burnside's estate. If so, the Farmers Loan and Trust Co. and Osborn are still responsible for it, as well as for the entire proceeds for which the plaintiff has sued them. This case well illustrates the reasonableness of the rule requiring privity between the parties, because it throws upon the defendant, a stranger to the transaction, the litigation of the plain-

tiff's claim against the parties in New York. It may be decided one way here and another way in New York. While this would be no ground in itself for dismissing the suit, if it lies, the embarrassment of such a result shows that the point in issue ought to be settled between the parties from whose relation it arises. The defendant has no specific property belonging to the plaintiff, nor anything received from the plaintiff ; he has received no money under a promise or direction to pay it to the plaintiff; he has disposed of no property of the plaintiff, nor has the money sued for come into his hands in any way as the trustee of the plaintiff. We do not think, therefore, that he is liable to the plaintiff in an action of *assumpsit.* There is no privity of contract between the parties, and hence the nonsuit was properly granted.

*Petition dismissed.*

*Arnold Green & Joseph C. Ely,* for plaintiff.

*Francis Colwell, Samuel P. Colt & Walter H. Barney,* for defendant.