JOHN A. SIMS *v.* THE YAZOO AND BIG BLACK PLANK ROAD CO.

CORPORATION: PLANK ROAD COMPANY CANNOT COLLECT TOLL WHEN ROAD NOT FIT FOR USE.—There is an implied undertaking on the part of an incorporated plank road company with a person travelling on their road, that the road is reasonably fit for use; and such undertaking on the part of the company constitutes the consideration for the obligation of the traveller to pay toll: and hence, if the company fail in the performance of their undertaking, there is no binding obligation on the traveller to pay toll, and he cannot be compelled to do so.

ERROR to the Circuit Court of Marshall county. Hon. John F. Cushman, judge.

This was an action of debt by the Yazoo and Big Black Plank Road Company, against John A. Sims, to recover an open account of $122 40, for the passage of defendant's stage-coaches over plaintiff's road. The defendant pleaded the general issue, and relied on failure of consideration.

The plaintiff proved that the defendant's coaches passed daily through its toll-gate, for six months in the year 1856; and that the amount sued for was the established rate of tolls, and that the same was not paid. It was agreed that the plaintiff was an incorporated company with power to erect the road and gates, and charge toll.

Defendant then proved by one Wilson, that the plank road of plaintiff is, and was, at the date of plaintiff's account, located on the public road leading from Yazoo city to Benton; that defendant was engaged in carrying the United States mail in

coaches between those points; and that the toll-gates of plaintiff are located on said public road, at each end of the plank road; and that defendant was compelled to pass through the toll gates with his coaches, in order to run them from Yazoo City to Benton. That said plank road was in such bad condition, and so much out of repair, that said defendant could not run his coaches over any portion of it during the time embraced in plaintiff's account; and that said plank road being located on the public road was a disadvantage to defendant in running his coaches. He further proved that plaintiff's toll gates were located as prescribed in its charter. This was all the evidence.

The court then, at the instance of the plaintiff, instructed the jury, as stated in the opinion of the court. The jury found a verdict for plaintiff, for the amount sued for and interest, and the defendant sued out this writ of error.

*Walter* and *Scruggs,* for plaintiff in error.

*Clapp* and *Strickland,* for defendant in error.

There is, we insist, no error in the charge of the court, or in the verdict and judgment below; and the defendant having admitted, or it being shown by the proof, that he passed through the gates of the plaintiff, which were located as required by the charter, cannot avoid the payment of the toll by proof of the bad condition of the road. Proof or a defence of this kind could only be admitted upon one of two grounds: 1st. That the plaintiff, by failing to keep the road in repair, or by abuser or non-user of its corporate franchises, had forfeited the right to exact toll, or, in other words, had forfeited its charter; and 2d. Upon the ground of a failure of consideration, or no consideration, because the defendant could not and did not make use of plaintiff's road, although he passed through the gates. We think both of these grounds are wholly untenable.

1st. We insist that the plaintiff had the legal right to charge toll as long as its charter was not forfeited, and that this forfeiture cannot be set up in a collateral proceeding, but the charter is deemed to have a legal existence until a forfeiture is judicially declared in a proceeding instituted to test its validity, either by *scire facias* or *quo warranto*. This is a principle now universally recognized. The

failure to keep the road in repair may, and no doubt was, a cause of forfeiture, in addition to the remedy provided in the 13th section of the charter, but this is a very different matter from a forfeiture judicially declared.    Ang. & Ames on Cor. 5th ed. 888, § 777, and notes; *Nevitt* v. *Bank of Pt. Gibson*, 6 S. & M. 56; *Grand Gulf Bank* v. *Archer et al.* 8 S. & M. 173, and cases cited; *Arthur* v. *The Commercial & R. R. Bank of Vicksburg*, 9 S. & M. 394; *Bohannan* v. *Binns*, 2 George, 357.

And even if this were not the settled doctrine upon the subject, the defendant in this case has not placed himself in a situation to avail himself of the defence, since he has pleaded simply *nil debet*, and therefore admits the character in which the plaintiff sues, as it could only be questioned by a plea under oath.

2d.  As to the defence of failure of consideration.    This must be the ground relied upon by defendant, since he has not pleaded and does not pretend to allege payments.    Nor does he, nor could he, set up anything in the nature of a set-off.    The defendant does not allege any damage he sustained, or introduce any proof in that respect; nor would he have had any right, under the existing state of the pleadings, or under any state of the pleadings, to do so in this action.    The damage, had he sustained any, would be unliquidated and not the subject of set-off; and not only unliquidated but general; and it is no ground of action even that the defendant sustained general damage in carrying on his business, whether such damage resulted from his not attempting to travel the road at particular times, by reason of its being too much out of repair, or from not being able to travel it as expeditiously, and carry as large loads as he otherwise might and would have done. *Baxter* v. *Winooski Turnpike Co.* 22 Vermont (7 Washb.); see also 7 Met. 283.

The idea of setting up the defence of a failure of consideration in an action of this kind, appears to us fanciful in the extreme.  If the defendant can avoid payment of any and all toll upon the ground that he did not and could not travel over any part of the road, upon the same principle he can compel an abatement of the usual rate of toll, if he does not or cannot travel over all the road between the gates where he pays.    If a bridge be out of order, or a plank misplaced, so that he is obstructed in his journey to any extent, or has

to leave the road for any space, however short, he could set this up in bar, or at least in mitigation of damages, in an action for tolls. If an investigation of this frivolous and vexatious character were allowed in the case of every passage over the road, where would the end be to such litigation; and who, in the language of the court, in *Strong* v. *Dunlap & Sanderlin*, 10 Humph. 426, would be guilty of the folly of constructing a turnpike road or toll bridge? This surely cannot be the law. These corporations, it is true, are intended for the public convenience and comfort, and when they cease to subserve these ends, they become a nuisance instead of a benefit; and there is certainly no equity in compelling the travelling public to submit to a charge for passing over a turnpike road, which is either partially or wholly unfit for travel. But who ever thought he got the worth of his toll in passing over a turnpike or ferry? If the party sustains actual specific damage, he has his remedy against the corporation in a civil action. And in this case, if the road were unfit for the passage of defendant's coaches, and in the dilapidated condition he represents, he might either have had the company indicted for a nuisance at common law, or proceeded against it in the summary way provided in the 13th sect. of the act of incorporation, or both: *Susquehanna Turnpike Co.* v. *The People*, 15 Wend. 267; 9 Barb. 161; or he might have caused the proper proceedings to be instituted to effect a forfeiture of the charter; but if he chooses to neglect all of these various methods of redress, and to continue to pass through the toll-gates day after day, and month after month, without a word of complaint, so far as the proof shows, surely he cannot then be permitted to avoid paying the toll upon the ground relied upon in this case. He may show that the company had no right under its charter to erect its gates in particular localities. *Franklin and Columbia Turnpike Co.* v. *Campbell*, 2 Humph. 471; or that the franchise has been repealed or surrendered, or that it has expired by its own limitation, but not that there exists a cause of forfeiture. *Adams* v. *Brash & Start*, 6 Hill (N. Y.), 271. As long as the right to erect the toll-gate is conceded, and there has been no forfeiture adjudged, the right to demand the toll is a necessary incident. In the case from 2 Humph., above cited, the court says (p. 470): "The only question is as to the right of the company to erect the gate through

which the defendant passed, . . . . for (p. 469), if all the other gates have been improperly erected, it will avail the defendant nothing, provided the one (through which he passed) is properly there, so as to authorize a demand of toll."

The truth is, as it seems to us, the doctrine of failure of consideration, or no benefit received, applies only to cases of contract, express or implied, between the parties, and has no application to cases like the present. The contract here is between the company and the government, and not between the company and the individuals who may pass over, the road. The consideration which induced the legislature to grant the charter, was, as before stated, the public convenience and benefit, and when this consideration fails in consequence of the neglect of the company to keep the road in repair, the government that granted the franchise, or made the contract, can set up this failure of consideration and revoke the charter in consequence of it, or declare it forfeited in the mode prescribed by the act of incorporation, or otherwise regulated by statute or by the common law. But every attempt of an individual to set up such a plea or defence, is but an indirect method of assailing the charter of the company, whilst it still has a legal existence ; and this we have shown is inadmissible. In addition to the very numerous authorities already cited we may be permitted to refer to a few others illustrating the principle.

In *Strong* v. *Dunlap & Sanderlin*, 10 Humph. 426, already referred to, a bridge was constructed under authority of the county court (similar to the power given to our police courts), with authority to exact toll, and was received by the commissioners as having been built according to the requirements of the charter. Strong, the plaintiff in error, passed over the bridge, and refused to pay toll, and in defence of the action brought against him for it, he offered evidence to show that the bridge was not constructed according to the charter, and was out of repair. The evidence was held to be inadmissible, and the receiving of the bridge by the commissioners was held to be conclusive, at least as between the proprietor and persons passing on such road or bridge, of the right of the former to demand and receive toll from the latter. And the court remarks that " the argument opposed to this construction of the law would lead to gross absurdity. Can it be supposed for a moment that it was

intended to put it in the power of every one who passed the road or bridge, to force the owner into a vexatious and expensive litigation for the purpose of establishing his right to receive toll, by proving that the road or bridge was exactly conformable to the charter, or the requirements of the law ?" The court then proceeds to point out the remedies in such cases, which are similar to those referred to by us above.

In *Turnpike Company* v. *Smith,* 12 Verm. 212, it is held that " travellers are not excused from paying toll in consequence of the neglect of a turnpike company to keep their rates of toll exposed to view, as required by their charter ; the remedy should be by public prosecution."

So in *Proprietors of Quincy Canal* v. *Newcomb,* 7 Met. (Mass.) 276, the court say, that a person sued for canal tolls cannot be permitted to show, either in bar of the action or for the purpose of reducing damages, that the canal was not so constructed as to admit vessels drawing nine feet of water, as required by its charter. And the construction contended for by the defendant (say the court), would be attended with extreme inconvenience. The consequence would be that the plaintiff's right could be drawn in question and put in issue every time they demanded a toll (p. 282). If such a right (to demand toll) is asserted without authority, whoever makes the claim is liable to an information in the nature of a *quo warranto.* See also *Ayres* v. *Turnpike Company,* 4 Halst. 33.

We deem it unnecessary further to multiply authorities, as we think the legal principle, and only point involved in this case, has been repeatedly decided by this court, and that the charge of the court below alleged to be erroneous, is in conformity with these decisions. We will only remark in conclusion, that the case does not stand upon the footing of an individual passing through the gates of a turnpike, not as a traveller, or with the view of passing along the road, but for some other purpose. Whether the company could under such circumstances exact toll or not, is a question we do not undertake to decide. But in this case, the object of the defendant was to run his coaches along the highway, upon which the plaintiff had the right to erect gates, and demand toll, and whether he ran them upon the road or alongside of it, cannot affect the legal principle, provided he passed through the gates.

HARRIS, J., delivered the opinion of the court.

Plaintiff in error was sued in this action by the defendants to recover a certain amount of tolls claimed to be due them from plaintiff, for passing his stage-coach, as mail contractor, through defendants' toll gates, defendants being an incorporated company for the purpose of constructing a plank road on the public highway between Yazoo City and Benton.

The plaintiff in error pleaded the general issue, and under this plea relied on establishing a failure of consideration.

For this purpose, a witness was introduced, who proved that the plaintiff in error, at the time mentioned in the complaint, was running coaches and carrying the United States mail between Benton and Yazoo City; that the toll-gates of defendants in error were located on the public road, at each end of the plank road; and that defendants in error so located their toll-gates that plaintiff in error could not pass with his said coaches, or carry the mail, except by passing through said gates. That during the time for which the account sued on is charged, said plank road was wholly impassable; that the said plank road could not be travelled or passed over by said coaches at all; and, instead of being a convenience or benefit to plaintiff in error, that the same was a great hindrance and injury. And the question arises upon this state of facts, whether the defendants in error are entitled to recover upon the account sued on.

The court instructed the jury, that if they believed from the evidence, that the defendants in error were an incorporated company, authorized to construct the road, erect toll-gates, and charge toll, and that the coaches of the plaintiff in error passed through said gates, as stated in the account filed, that defendants in error had a right to recover the toll authorized by their charter, notwithstanding the condition of said road.

This instruction is assigned for error here.

Conceding the correctness of the principles established in the cases cited by counsel for defendants in error, we yet think that they are inapplicable to the case before us.

This suit is founded upon the implied promise of plaintiff in error to pay to the defendants the rates allowed by their charter, for passing plaintiff's coaches over their plank road.

To make this promise binding on the plaintiff in error, there must exist a legal consideration on which it is founded. Contracts with corporations, whether express or implied, are not exempted from this universal rule of justice and morality, that " *ex nudo pacto non oritur actio.*"

It is not the design of this charter to confer upon the corporation the right to demand of every citizen travelling the public highway, a specific sum for the benefit of the corporators, without any consideration moving from the corporation to such citizen therefor. It is not in the power of the legislature thus to appropriate private property for *private* use, and without any consideration or benefit to the person whose property or money is thus claimed. But all duties imposed upon corporations aggregate, by law, and all benefits conferred at their request, raise implied promises, which the law will enforce. See Angell on Corporations, 176, 2d edit.

It is no answer to this view, to say that the charter of the corporation is not forfeited until a judicial declaration in a direct proceeding for that purpose, has been made. No such defence is here relied on. It is admitted by the pleadings, that the defendant is a corporation, with *capacity to contract,* according to its charter. Like natural persons, it may enforce the performance of such contracts against all persons dealing with it. But like natural persons, the law will hold it to the performance, *on its part,* of those duties, and obligations, and mutual promises, out of which the implied contract sued on arises, and upon which, as a consideration, it is founded.

This corporation, on its part, agrees and promises that it has a plank road within the points prescribed by its charter, in such condition, that the traveller applying for the purchase of the privilege of passing over it, can enjoy the right so professed to be purchased. The traveller, on his part, in consideration of this undertaking and promise on the part of the corporation, agrees to pay the rates of toll authorized to be charged, or agreed on. To authorize the corporation to sue for and recover such toll, when it has no road over which the traveller can pass at all, in violation of its implied contract, and without the discharge of those duties, on its part, which constitute the only consideration of the promise on which it seeks a recovery, would be to establish a doctrine, in relation to corpora-

tions, not recognized as to natural persons, and not contemplated by any provision in this or any other charter that has come under our observation.

The idea suggested in argument, that there is no contract, express or implied, between the parties to this record, but that the contract is between the State and the corporators, involves a legal contradiction. The action is in form *ex contractu.* The declaration is certainly very defective, but enough appears to show that it is a personal action, and not in form *ex delicto.* It seeks the recovery of a debt, which it alleges the plaintiff in error owes to, and unjustly detains from, the defendants in error. It is, therefore, a declaration upon a contract between the parties to this record, or no cause of action is stated at all. Indeed, it is undeniable, that if there is no *contract, either express or implied,* between these parties, then this is a "false clamor," and has no place justly in court. But this theory is wholly erroneous. The contract between the State and the corporators, is one entirely distinct from the contract here declared on. The contract with the State gives capacity and ability to this corporation to erect their road and toll-gates, and to contract with the public in reference thereto, under certain restrictions. Whether that contract has been complied with, so as to entitle them to their corporate existence, is a matter between the State and the corporators.

But with every individual claiming the right to use the road, the corporation thus created has a right to contract, and does contract, either expressly or by implication of law, before any right of action in this form can arise; and both public policy and private right forbid that any exception should be ingrafted upon the doctrine of contracts, in favor of these corporations, by the courts, not clearly granted by their charters. They are created for the public convenience; they voluntarily assume their obligations to the State, as well as to private individuals; and no sound reason of policy or justice is perceived, why they should not be held as strictly to the observance of *their* contracts and duties as other suitors in court.

That they may be liable to "frivolous and vexatious litigation," is only an incident to the right to sue and be sued, which they have invoked for their benefit, and they have the same protection against such ills which belong to natural persons, among the most

efficacious of which is the observance of good faith and justice on their part; and without this, they have no right to complain of its absence in others whom they have thus wronged. The tendency of a contrary doctrine would be to invite default, by holding out a premium for bad faith and neglect of duty, where public necessity and private convenience both demand the most exact diligence.

The distinction between suits *by* a corporation *against* persons contracting with it to enforce the performance of such contracts, and suits *against* corporations for neglect of the duties imposed by their charter, showing no *special peculiar damage* sustained from the neglect or breach of duty complained of, is too obvious to need remark.

The cases cited by counsel are of this latter class, and have no application to the principle here involved.

In the view here taken, the instruction of the court below was erroneous.

Let the judgment be reversed, cause remanded, and a *venire de novo* awarded.