STATE OF MISSOURI, Appellant, v. SCHENKEL, Respondent.

St. Louis Court of Appeals, February 18, 1908.

1. **TOLL ROADS: County Courts: Collecting Tolls: Condition of Road.** The statutes, sections 9547, 9548 and 9476, Revised Statutes 1899, providing for the taking over by counties of turnpikes constructed by private companies whose franchises have expired and erecting and maintaining toll gates on such roads, are parts of the general scheme of the road legislation of the State and must be construed according to the same principles applied in construing other statutes dealing with roads and highways, so that when toll gates are erected on such roads by the county court, the presumption must be indulged that the roads on which they are erected conform to the statutory requirements. An ac-

tion brought by a county court to recover tolls for the use of a road, which the county has taken over and erected toll gates upon, can not be defeated on the ground that the road was not maintained in proper condition.

2. ——: ——: ——: **Jurisdictional Facts.** A county court, in taking over a private toll road on the expiration of the franchise under which it was built, acts judicially in determining the existence of facts which enabled the county to erect toll gates along the road, and that determination of the facts is conclusive in a collateral attack.

3. ——: ——: ——: ——: **Appeals:** The fact that there is no appeal from an order of the county court to erect toll gates does not work an exception to the rule in respect to such an order. The order can not be attacked collaterally by showing that it was made when the road was not in the condition required by statute which enabled the county court to erect toll gates.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED (*with directions*).

*James W. Reynolds,* prosecuting attorney, *J. D. Hostetter,* assistant prosecuting attorney, *E. W. Major* and *Joe Tapley* for appellant.

The record shows all of the requirements of a toll road under sections 9547 and 9548 and 9476 of Revised Statutes of 1899. This is conceded by the defense but their claim is that that portion of the county court judgment in the record that finds and adjudges that this road possesses all the statutory requirements as to width, length and improvements necessary to toll roads is erroneous and false and that the correctness of that judgment can be made an issue in this cause. This precise question was decided in the negative by this court in the case of Givens v. McElroy, 79 Mo. App. 679, which was a case involving a similar gravel road in Pike county. This defendant cannot raise the point that the

county court abused the power delegated to it by the Legislature. The correction or restraint of any such abuse is in the public and not in any private individual unless he will suffer private injury thereby. Bliss on Code Pleading, sec 8; Cummings v. St. Louis, 90 Mo. 264; Kitchell v. Railroad, 79 Mo. App. 346; Glassner v. Brewing Association, 100 Mo. 516; Glasgow v. St. Louis, 107 Mo. 204.

*Pearson & Pearson* and *Ball & Sparrow* for respondent.

GOODE, J.—On December 23, 1903, the county court of Pike county by its order of record, duly considered, adjudged and decreed a certain gravel road in said county extending from the city of Louisiana to Ashley, should be, and the same was, established and declared a toll road under the provisions of an act of the General Assembly approved May 5, 1899, and contained in the Session Acts of said year on pages 345 and 346. Said act was incorporated in the Revised Statutes of 1899 as sections 9547 and 9548; and the former section (9547) was repealed and a new section enacted in lieu thereof by an act of the General Assembly approved April 3, 1901. See Session Acts 1901, p. 235. The new section (9547) differed from the first one only in providing it should be the duty of the prosecuting and circuit attorneys of the respective counties and districts through which such roads might run, to prosecute suits brought in the name of the State to enjoin and prohibit the private corporations to which the roads originally belonged from collecting tolls. The legislation as amended may now be found in the Missouri Annotated Statutes of 1906, volume 4, sections 9547 and 9548 which read as follows:

"The control and management of all graveled or macadamized roads of this State which may have been

originally constructed by any corporation whether organized under special act of the legislature or under general law, whose charter life has expired or may hereafter expire, shall immediately pass to and vest in the county court of the county in which such road may be situated, and in all cases where such corporation whose charter life has expired by limitation or otherwise is in the possession of and in control of such roads and is collecting tolls thereon, it shall be the duty of the prosecuting and circuit attorneys of the respective counties or circuits through which such road or roads may run to prosecute suits in the name of the State at the relation of such attorneys to enjoin, restrain and prohibit such corporations from collecting such tolls, and such suits may be prosecuted in the name or names of one or more citiztns of such counties or circuits who reside in the vicinity of such roads and travel over the same, and in case the circuit or prosecuting attorneys fail or refuse upon request to prosecute the same, any citizen may, in the name of the State at the relation of said citizen, prosecute such suits to the same extent and in the same manner as the circuit or prosecuting attorney could have done."

"Such county court shall have power to establish and maintain toll gates upon all such roads as may pass under its control and management, as mentioned in the preceding section: Provided, such roads be more than five miles in length and conform to the requirements prescribed in and by section 9476, Revised Statutes, Missouri, 1899, and such county court shall have power to fix and prescribe the rates of toll, which shall not exceed the rates prescribed by section 1230, Revised Statutes Missouri, 1899, and to enforce the collection from all persons whomsoever travelling upon or using such roads; and the funds arising from all tolls on such roads shall be used and applied in operating the same,

and in the improvement of such roads and keeping same in good repair."

In the order of the county court adjudging the gravel road from the city of Louisiana to Ashley should be established as a toll road, the legislation we have noticed was recited and the county court purported to act under and by virtue of the authority of said legislation. The court's order further recited the existing gravel road from the city of Louisiana to Ashley, a distance of about eighteen miles, was originally constructed by a corporation organized under the laws of this State whose charter life had long since expired, and said gravel road possessed all the statutory requirements as to width and length and improvement necessary to toll roads; wherefore it was considered, adjudged and decreed by the county court as aforesaid, that the road between the points named should be and was established and declared to be a toll road under the provisions of said legislation; that toll gates be placed at certain points, and toll gatherers appointed to collect tolls from all persons using the road at rates which were prescribed in the order; further, that the road be separated into two parts; the part from Louisiana to Bowling Green to be known as the Louisiana and Bowling Green Gravel Road and the other part, leading from Bowling Green to Ashley, to be designated as the Bowling Green Gravel Road; that the control and operation of the road should be vested in two superintendents who should hold their offices under the appointment of the court, the operation and management of the road to be subject to the supervision of the court. The superintendents were given power to employ laborers to keep the toll road, including bridges and culverts, in good repair, and make all necessary contracts in relation thereto, subject to the supervision and control of the court. Whatever funds were collected for tolls the superintendents were authorized to spend in repairing and operating the road, re-

pairing bridges thereon and keeping the road in good
condition for the use of the traveling public. Other
provisions contained in the order need not be recited,
because they have no bearing on the decision of the
present case; which is a controversy growing out of the
refusal of the defendant to pay tolls on the road running
between Louisiana and Bowling Green, and known as
the Louisiana and Bowling Green Gravel Road. These
refusals occurred on March 14, 1907. Schenkel was driv-
ing an oil wagon drawn by two horses over the road on
said date. He put his refusal to pay toll on the ground
the road was not of the kind the statutes authorized the
county court to collect tolls on, inasmuch as it did not
comply with the requirements of section 9476 of the Re-
vised Statutes of 1899. Section 9548, which author-
izes county courts to establish and maintain toll gates
on all roads acquired under section 9547; that is, on all
gravel roads originally constructed by corporations
whose charters have expired, appends, as a proviso to the
authority of the county court to establish and maintain
toll gates on these roads, certain conditions, namely,
the roads must be more than five miles in length and
conform to the requirements of section 9476. The lat-
ter section is found in the chapter on turnpike roads. It
empowers the county court of any county in the State,
when satisfied the public interests will justify it, to
appoint commissioners to view, survey and report for
the purpose of locating one or more roads, beginning
at the county seat or other eligible point, and running
to some point within or at the county line. Section
9476 says roads established under the provisions of the
article on turnpikes, shall be not more than sixty feet
or less than forty feet wide, with at least twenty feet
of turnpike, with substantial bridges and culverts at all
watercourses and other specifications we need not men-
tion. The shortcomings of the road from Louisiana to
Bowling Green in comparison with the requirements of

section 9476, are said to be the lack of bridges over four streams and a roadbed less than twenty feet wide in places, and for these deficiencies the defendant refused to pay toll.    This action is an information by the prosecuting attorney, charging defendant with the commission of a misdemeanor in refusing to pay toll, and though the proceeding is criminal in form, both parties agree it is essentially a civil action, and request this court to determine the main proposition of whether the county court is entitled to collect tolls for the use of the road, without reference to the question of whether the proceeding is correct.    At the conclusion of the evidence the court below instructed the jury to return a verdict against the defendant and this having been done, the court set aside the verdict on motion for new trial without assigning any reason for the ruling.    The State appealed and, as said, both parties desire us to pass on the right of the county court to collect tolls; the defendant insisting the public may use the road in its present condition free of tolls.    We will ignore the defense based on the narrowness of the roadbed; for we think the evidence offered in support of said defense does not raise a serious question against the right to take tolls.    The roadbed was shown to be less than 20 feet wide at one or two points, but not for a sufficient distance to occasion serious inconvenience to travelers, or make the road as a whole fall short of substantial conformity to the statute.    As we said in an earlier opinion involving a road like this one, the fact that the topography of the country makes it necessary at some points to construct the road less than the width the statute prescribes, will not justify a court in holding against substantial performance of the statutory requirements.    [Ashby v. Elsberry, etc., Road Co., 99 Mo. App. 178, 73 S. W. 229.]    This defect is not strongly insisted on by counsel as a defense.    Four streams or creeks cross the road between Louisiana and Bowling

Green.   One of them is so small it may be disregarded
as needing no bridge.   The other three are called creeks
by the witnesses, and one of them appears to be of con-
siderable size.   They are all fordable usually, but have
been known to be so deep when the streams were in
flood as to be dangerous for a while; and one of the
banks of a certain ford is so steep it cannot be mounted
safely, but vehicles must make a slight detour around
the side of the declivity.   Witnesses spoke of bridges
across streams on the road, but we understand three
streams are unbridged.   It seems the trifling detour at
Igo ford was made after the county court took charge
of the road, because the old route over the steep bank
was dangerous.   One witness said the unbridged streams
are all right, though after a rain they are a little swift
until the water goes down.   This witness said people
formerly had a little trouble with the streams, but he
never had had any since he came to the country, except
with one ford a year or so ago; that in crossing the
fords in winter it was sometimes necessary to cut the
ice.   Another witness, who is one of the superintend-
ents of the road, said there had not been many times
within his recollection when the creeks and streams
were not fordable by a horse and buggy; very few days
when a ford would prevent vehicles from crossing,
though this had happened.   The general trend of the
evidence is that since the county court took possession
of the road, both the fords and the roadbed have been
improved.   All testimony about the condition of the
road and the lack of bridges was objected to by plain-
tiff and provisionally admitted by the court, which di-
rected a verdict for plaintiff, notwithstanding said evi-
dence, but, as stated, set the verdict aside.   The de-
fendant testified he was driving over the road March
14, 1907, and was requested by the toll gatherer to pay
toll, but refused to do so.   He told him he would not
pay until the condition of the road was better; to keep

an account of his tolls until the litigation which would arise, was disposed of; that he could not see why, if everybody paid toll, the road was not kept in better condition.

One requirement of section 9476 is substantial bridges and culverts at all points where a turnpike road crosses watercourses. The three streams we speak of, flow in well-defined channels of considerable size and are watercourses; though according to the evidence they are easily fordable by a team and vehicle, except on rare occasions of flood or freshet. No proof was introduced to show travel had been impeded by high water at any time near the date when defendant refused to pay toll. The defendant used the road continually, as did other citizens of the vicinity, and he predicates his defense, not on damage or inconvenience suffered in waiting for streams to subside, but on the want of authority in the county court to establish toll gates and collect tolls while the streams were unbridged. He contends the construction and maintenance of bridges over all watercourses, were conditions precedent to the exercise of the right given by the statute to erect toll gates and take tolls. Most cases involving the right to take tolls have arisen between a private company enjoying a toll franchise and an individual who used the property to which the franchise was appurtenant. Those adjudications do not furnish the rule of decision for this one, wherein the controversy is between a tribunal representing the general public, and one who uses the property; but they may be briefly noticed as germane to the points before us. Several text writers are non-committal on the question of whether a private corporation owning a turnpike road, ferry or port of entry, or other property subject to a toll franchise, may collect tolls for the use of the property when it is out of repair; and this is no cause for surprise in view of the conflict in the decisions. But in one treatise we

have found a definite discussion and statement of the
law on the subject.      [5 Thompson, Corporations, sec.
5932.]    This author says the prevailing opinion is, no
defense can be maintained against the payment of tolls
because the company owning the franchise has failed to
perform its public duty to keep the property in re-
pair, but the remedy for the wrong is *quo warranto*
to forfeit the franchise, or indictment.      Two different
theories on which this doctrine is held are expounded.
One is that in default of interference by the State, a
traveler who uses the road subjects himself to the pay-
ment of tolls and is estopped from setting up in defense
of an action, the unfit condition of the road for use.
Another theory is that neglect of the corporation to
keep the property in repair, is a misuser of its fran-
chise which cannot be taken advantage of in a collateral
action by a private individual, but must be redressed by
a judgment of forfeiture in a proceeding instituted by
the State.    Cases determined on either of these theo-
ries are but remotely in point in the case at bar; though
they hold that only the public authorities, and not an
individual, can challenge the right to tolls on the ground
of the unfit state of the property.    Judge THOMPSON'S
treatise states, too, the contrary rule of other courts,
allowing an individual sued for non-payment of tolls
a defense if the property is not in the state of repair
it ought to be.    The author gives the support of his
own opinion to the latter rule, for this reason: a high-
way or other locus subject to tolls in favor of a company,
belongs to the public, and a citizen ought not to lay
himself liable for toll by merely using the property of
the public, if the company holding a toll franchise ap-
purtenant to it, fails of its duty to keep the property
in repair.    But this doctrine is in conflict with the
general principle, that an abuse of corporate franchises
cannot be made available to a private person in a col-
lateral action instituted against him by the corporation.

As they throw some light on the question before us but are not in point, we will cite, without reviewing, the cases wherein was considered the right of a private company to collect toll when the property to which the franchise was annexed was out of repair. [Quincy Canal Co. v. Newcomb, 7 Metc. (Mass.) 276; Adams v. Beach, 6 Hill (N. Y.) 271; Stults v. Turnpike Co., 48 N. J. L. 586; Nicholson v. Id., 28 N. J. L. 142; Center Turnpike Co. v. Smith, 12 Vt. 212; Truckee Turnpike Co. v. Campbell, 44 Cal. 89; Sims v. Yazoo Plank Road Co., 38 Miss. 23; Patterson v. Road Co., 56 Ind. 20; Aurora Turnpike Co. v. Niebrugee, 25 Ind. App. 567; Strong v. Dunlap et al., 10 Humph. (Tenn.) 423.] The doctrine of most of those adjudications is, that one who uses the road will not be permitted to refuse payment for the use on account of its condition; this being cause for the interference of public officials. And while it is allowed the Legislature may inhibit the taking of tolls until the property is up to a certain standard, or if it falls out of repair, may make its proper construction and maintenance conditions precedent to the exercise of a toll franchise against the objection of travelers, the weight of opinion is that such an inhibition will not be deduced from language in a charter or public statute merely prescribing specifications for the construction of the property.

This cause must be determined on other principles than those involved in the cases cited. The Legislature of this State has intrusted the opening and control of highways to the discretion and wisdom of the county courts, and other courts cannot interfere with a decision by a county court regarding whether the public welfare required the establishment of a proposed road. [Aldridge v. Sears, 101 Mo. 400, 14 S. W. 118, and other Missouri cases, *infra.*] The Statute providing for the construction of graded and macadamized roads and turnpikes, or the taking over by counties of such roads

as were constructed by private companies whose charters have lapsed, are parts of the general scheme of the road legislation of the State, and ought to be construed according to the same principles applied in construing other statutes dealing with roads and highways. That is to say, it ought to be held the Legislature has delegated to the county courts the power to say when tolls shall be charged on these roads, unless the statutes use words expressing, or clearly implying, an inhibition against the taking of toll until the roads are in a certain condition.   One of the statutes we are concerned with (sec. 9476) says the county courts may erect toll gates on private gravel roads taken over by them provided the watercourses crossing the roads are bridged and the road conforms to other requirements. It is obvious the Legislature has imposed on the county court the duty of ascertaining whether or not a given road conforms to the statutory specifications, before erecting toll gates.   The presumption should be indulged that said court will perform this duty fairly. No words are found in the statutes which expressly, or by necessary implication, preclude the county court from collecting toll for the use of a road taken in charge, though it is not up to the legal standard.   Properly considered, the provision that toll gates may be erected when the road conforms to section 9476, places a solemn public responsibility on the county courts, but does not prescribe a condition precedent, the breach of which will excuse an individual who uses the road from payment of tolls.   The purpose of the statute as shown in its concluding clause, is to enable county courts to raise money for the improvement of the roads.   All funds obtained from tolls on a road must be applied in operating it, or in improvements and repairs.   This case stands on a different footing from that of a private company in the enjoyment of a toll franchise which seeks to collect tolls when the subject-matter of the franchise

is out of repair.   Private companies are organized for gain and are prompted in the main by their own advantage.   We have seen that according to high authority, even their failure to keep franchise property in order, cannot be availed of by a person who uses the property, in defense of an action for toll.   Much more cogent is the .reason for holding in an instance like this, where the custody and management of the property are lodged in an official tribunal charged with the duty of handling it for the benefit of all citizens and having no selfish interest to subserve, that said tribunal cannot be defeated in an action instituted to recover a charge prescribed for the use of the property, because the road is not in the condition the statutes say it shall be when toll gates are erected.   On this point Judge THOMPSON says:

"If the condition precedent named in the statute upon which the right of the toll-road corporation to demand tolls from the traveling public, has not accrued, any person using the highway and refusing to pay toll, may defend an action brought against him to recover such tolls, upon this ground; and such a defense is in no sense an attempt to litigate with the corporation the question of its rightful possession of a franchise, in a collateral proceeding.   But where the right to determine whether this condition precedent has taken place, and upon making the determination, to confer upon the corporation the franchise or license of collecting tolls, is vested in a public board, such as the supervisors of a county, and they, in the exercise of the power, make the determination and confer the franchise or license, then it will not be competent for one sued for non-payment of tolls, to set up by way of defense that the conditions did not exist which authorized such public board to grant the franchise or license.   That would be an attempt to relitigate, in a collateral way, a question which they have decided, and to overturn, in an action

between the company and a private party, their judgment, in a case where they had jurisdiction, on the mere ground that their jurisdiction was erroneously exercised." [5 Thompson, sec. 5914. See, too, Vinkestone v. Ebden, 1 Salk. 248.]

We find in the record of the proceedings by which the county court of Pike county took charge of this road and ordered tolls to be collected for its use, a recital of all facts essential to the exercise of the court's jurisdiction; and, as said tribunal was vested with authority to determine whether or not the recited facts existed, we consider its finding invulnerable to collateral attack, and perhaps to any form of attack.    In our view the county court of Pike county acted judicially and not as an administrative board, in determining the facts existed on which it might erect toll gates along the road in question.    The court expressly found and recited in its order, not only the expiration of the charter of the original proprietary 'company, but that the road possessed "all the statutory requirements as to width, length and improvement necessary to toll roads."    The Supreme Court has frequently held in injunction suits instituted by property owners to prevent the opening of a road through their land, and other collateral actions, that a county court's finding of the existence of the facts permitting the opening of the road, was conclusive; even its finding that notice had been given to the owner of the land when, in truth, it had not.    [Lingo v. Burford, 112 Mo. 149, 20 S. W. 459; Mitchell v. Railroad, 138 Mo. 326, 39 S. W. 790; Baubie v. Ossman, 142 Mo. 499, 44 S. W. 338.]    In the Lingo case just cited, the jurisdiction of the county court was assailed for want of notice to the plaintiff of the proposed condemnation of his land, but the order of the county court to open the road recited the giving of due notice according to law.    Such being the state of the case, the Supreme Court said:

"That the county court was only authorized to entertain the proceeding to condemn plaintiff's land for the road, upon notice given as required by the statute, section 7797, is not to be questioned; but it is a well-settled principle that where the jurisdiction of an inferior court depends upon a fact which said court is required to ascertain and settle by its decision, its decision is conclusive as against a collateral attack. [Jackson v. State to use, 104 Ind. 516; In re Grove Street, 61 Cal. 438; People v. Hagar, 52 Cal. 171; Shawhan v. Loffer, 24 Iowa 217; Porter v. Purdy, 29 N. Y. 106; Lewis on Eminent Domain, sec. 605; Black on Judgments, sec. 288; Elliott on Roads & Streets, 243; State ex rel. v. Smith, 105 Mo. 6.]

"The county court had original exclusive jurisdiction to hear and determine upon a proper petition and due notice whether a new public road should be established over the route designated in the petition. The petition stated every fact necessary to give the court jurisdiction of the subject-matter. Twenty days' notice of this application was required. The statute required 'proof of notice having been given as required.' The county court was the tribunal authorized to hear and determine the sufficiency of the proof. It was not required by law to spread on its record the evidence by which it ascertained that notice had been given. It did find and spread on its record that 'notice had been given according to law.' This was a fact *in pais* to be established by evidence, and its power to proceed further in the case depended upon the giving or failure to give this notice. It judicially ascertained it was given and we think it is conclusive as against a collateral attack." [Lingo v. Burford, 112 Mo. 155.]

In Givens v. McElroy, 79 Mo. App. 671, the relief asked was the writ of injunction against members of the county court and a road superintendent appointed by them. The suit was by citizens and taxpayers who

alleged the county court had erected gates and were collecting toll for the use of a gravel road which had belonged originally to a private company. As ground for relief, the petition said the conduct of defendants in erecting gates and collecting toll, was unlawful. It was admitted the road met all the requirements of a toll road, and for this reason the decision is not positive authority in the present case; but the relief prayed was denied for the reason that, if there had been an abuse by the county court of the right to take toll, redress could only be enforced at the suit of public officials or private persons specially damaged. The intimation that any kind of private suitor might complain, was a casual remark, as the question was not involved in the decision. Analogous to the foregoing cases and following the same principles of decision, are those cases holding conclusive the finding of a probate court of the existence of facts authorizing the appointment of an administrator of an estate. [Johnson v. Beasley, 65 Mo. 256; In re Est. of Davison, 100 Mo. App. 263, 73 S. W. 373; Van Fleet, Coll. Att., 575.] A leading case on the question in hand is Brittain v. Kinnaird, 1 Broad. & Bing. 432. An act of Parliament empowered magistrates to seize and forfeit any boat loaded with gunpowder. A conviction occurred and the owner of the boat brought trespass, offering to prove the vessel seized was not a boat and therefore the magistrate could not give himself jurisdiction by finding against the fact. It was held the conviction was conclusive; for though the magistrate had no jurisdiction unless the vessel was a boat in the meaning of the act, he had to inquire and find whether it was or not, and his finding settled the question. Very much in point, too, is Mould v. Williams, 5 Ad. & El. 469. In State ex rel. Rice v. Simmons, 35 Mo. App. 381, a statute was involved which authorized county courts to appoint an extra justice of the peace for a town situate in five hundred

yards of a mineral spring. A proceeding in *quo warranto* was begun to oust an appointee of the county court because, in truth, there was no mineral spring within the prescribed distance of the town for which the justice was appointed; but it was ruled the finding of the county court was conclusive. And where courts had power to lay out highways if certain facts existed, which in truth did not exist, the orders and findings of the courts were not void. [Huntress v. Effingham, 17 N. H. 384; State v. Rye, 35 N. H. 368.] These instances could be multiplied indefinitely but we forbear. Numerous illustrations of the general doctrine, its proper exceptions and others erroneously allowed, will be found in Van Fleet, Collateral Attack, chapters IV and XII.

We have no doubt evidence was not admissible to show the road in question was without bridges, unless the omission of the legislature to provide for an appeal from the order of the county court to erect toll gates, ought to work an exception to the prevalent rule. On this proposition Van Fleet says some old cases hold that when no appeal is given, the judgments of inferior courts may be assailed collaterally, but the later and better considered cases hold the contrary. [Van Fleet, Coll. Att., sec. 15, citing Grigons' Lessee v. Astor, 2 How. (U. S.) 319, 340; Ft. Wayne v. Cody, 43 Ind. 197; Peary v. Morse, 57 Vt. 509; Hyatt v. Bates, 35 Barb. 308.] It looks like the true view is that the Legislature intended, in omitting to provide a method to review the judgments of the inferior tribunal, to give finality to its judgments, instead of lay them open to collateral attack. The case of Grignons' Lessee in 2 Howard, is a good one on the point under advisement, involving as it did the finality of a finding of a probate court that certain facts existed which authorized it to order or license the sale of a decedent's realty to pay his debts. The opinion says:

"The granting the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not, is wholly immaterial, if no appeal is taken; *the rule is the same whether the law gives an appeal or not; if none is given from the final decree, it is conclusive on all whom it concerns.* The record is absolute verity, to contradict which there can be no averment or evidence; the court having power to make the decree, it can be impeached only by fraud in the party who obtains it. [6 Pet. 729.] A purchaser under it is not bound to look beyond the decree; if there is error in it, of the most palpable kind; if the court which rendered it, have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of a purchaser is as much protected as if the adjudication would stand the test of a writ of error; so where an appeal is given but not taken in the time prescribed by law." (The italics ours.)

In Seafield v. Bohne, 169 Mo. 537, 69 S. W. 1051, which was a proceeding to enjoin the judges of a county court and a road commissioner from opening a public road through the complainant's land, the effect of no appeal being provided for was touched on incidentally. After saying the county court had exclusive jurisdiction of the proceeding to open the road, but an appeal lay from its order to the circuit court, the opinion says:

. "In order to render its judgment valid the court must proceed in the manner pointed out by the statute. But not every error the court may commit in the course of the procedure will render its judgment void or subject to a collateral attack. *There may be errors that can be corrected only on appeal or certiorari and, if in such case there be no appeal or certiorari prosecuted, (provided) the judgment must stand unimpeached.* It is only

129 App—16

when the county court acquires no jurisdiction of the case in the first instance, or when, after having acquired jurisdiction, it goes beyond its limits, that its action is to be treated as a nullity."

The result of our examination of this record is that the court below erred in granting a new trial and its order will be reversed and the cause remanded with the direction to set aside the order for new trial and enter judgment on the verdict.  All concur.